**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**SHANE R. GREEN,**

                  **Plaintiff,**

      **v.**                           **Civil Action 2:20-cv-232**
                                     **Judge Sarah D. Morrison**
                                     **Magistrate Judge Jolson**

**COMMISIONER OF
SOCIAL SECURITY,**

                  **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Shane R. Green, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.     BACKGROUND

Plaintiff protectively filed her application for SSI on August 24, 2016, alleging that she was disabled beginning June 2, 1971. (Doc. 6, Tr. 470–75). After her application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held the hearing on October 2, 2018. (Tr. 352–68). On December 17, 2018, the ALJ issued a decision denying Plaintiff's application for benefits. (Tr. 292–308). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–7).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on January 15, 2020 (Doc. 1), and the Commissioner filed the administrative record on March 16, 2020 (Doc.

6). Plaintiff filed her Statement of Errors, (Doc. 8), which is fully briefed and ripe for consideration.

### A.     Relevant Medical History and Hearing Testimony

Because Plaintiff's statement of errors pertains to only her mental impairment, the Undersigned will limit the discussion of the medical record and the hearing testimony to the same.

### i.     Relevant Medical History

> Shortly before her alleged onset date, the [Plaintiff] presented with complaints of anxiety as she was in withdrawal from Percocet (Exhibits 1F, 2F). She entered treatment in August 2015, with the records showing that she remained sober as of that time (Exhibit 2F, 6F, 7F, 13F). She was discharged in October 2015; at which time it was noted that her goals were met and she was dealing well with life stressors.

(Tr. 298).

> The [Plaintiff] reported issues with concentration, anxiety attacks, and being scared to go outside, talk to people, or be around others. During her psychological consultative examination, however, the [Plaintiff] presented as alert, oriented, and appropriate dressed with, what appeared to be, average intelligence (Exhibit 6F). She seemed preoccupied with her thoughts, though, and it was occasionally necessary for her to need questions repeated. Her answers tended to be brief, but coherent and relative, and her thought processes seemed sluggish, though her thought associations were adequate. The [Plaintiff] was noted to seem to be discouraged by life in general and she appeared moderately depressed. She worried about the welfare of her children, but indicated she had good relationships with her siblings and she usually received good job performance rating, having seldom had a major problem getting along with co-workers and supervisors. Still, the [Plaintiff] was noted to be capable of understanding and remembering instructions, she was noted to not have any major difficulties staying focused during the interview, and it appeared she was handling her life stressors moderately. Throughout the records, the [Plaintiff] reported some improvement in her symptoms with medication, though she did have periods of increased situational stressors. Still, even during periods of increased symptoms, the [Plaintiff] was repeatedly noted to be alert and oriented, with normal and/or appropriate mood and behavior, normal judgment and insight, and normal memory and concentration, even during periods of reported increase in mental health symptoms (see e.g. Exhibits SF, 7F, 8F, 9F, 10F, 13F, 16F, 18F, 21F, 24F). The [Plaintiff] also reported that she was able to attend her daughter's ball games, babysit her grandchildren, cook, clean, do laundry, shop for groceries, take care of pets, pay bills, count change, and use a checkbook (Exhibits 3E, 4E). Further, she had no problems following instructions or getting along with authority figures.

(Tr. 299).

Mentally, the records document the [Plaintiff]'s depression, anxiety, PTSD, bipolar disorder, and ADHD. In early to mid-2016, the [Plaintiff] reported being in a down mood with no energy, though she denied mood symptoms (Exhibit 3F). She indicated that she was focusing better now that she was not working, however, and she was spending a lot of time with her kids. In October 2016, during her physical consultative examination, the [Plaintiff] noted occasional difficulty with concentration and focusing on task; however, she exhibited a pleasant affect and appropriate mood, she was alert and oriented and able to follow directions readily, she did not avoid eye contact, and her mentation and thought process appeared to be normal. Treatment notes from that same month indicate that the [Plaintiff]'s sleep was fine, her interest and energy level were good, and her concentration was good on medication (Exhibit 9F). At that time, the [Plaintiff] also exhibited a normal mental status examination, with appropriate mood and affect, appropriate fund of knowledge, no memory impairment, and normal attention span and concentration.

In November 2016, the [Plaintiff] underwent a psychological consultative examination with James Spindler, M.S. (Exhibit 6F). Upon examination, the [Plaintiff] presented as alert, oriented, and appropriately dressed with, what appeared to be, average intelligence. She seemed preoccupied with her thoughts, though, and it was occasionally necessary for her to need questions repeated. Her answers tended to be brief, but coherent and relative, and her thought processes seemed sluggish, though her thought associations were adequate. The [Plaintiff] was noted to seem to be discouraged by life in general and she appeared moderately depressed. She worried about the welfare of her children, but indicated she had good relationships with her siblings and she usually received good job performance rating, having seldm had a major problem getting along with co-workers and supervisors.

Mr. Spindler indicated that the [Plaintiff] seemed capable of understanding and carrying out instructions in most job settings and she did not appear to have any major difficulties staying focused during the interview, but given her mental impairments, it seemed unlikely she would make effective use of her cognitive abilities or be able to maintain a level of attention and concentration sufficient for most job settings. Despite her reports of past good job performance and interaction, he indicated that it seemed unlikely she would be able to respond appropriate to supervision and co-workers with her mental health problems. Additionally, though it appeared that she was handling current life stressors moderately, it seemed unlikely she would be able to respond appropriately to routine work pressures. Overall, however, Mr. Spindler did find the [Plaintiff] had the mental ability to manage her funds.

Treatment notes from later in November 2016 and December 2016 indicate that the [Plaintiff] reported being irritable and exhibiting some nervousness and anxiety

3

since the passing of her mother, though she continued to present as alert and oriented, with normal mood and affect, and normal behavior, judgment, and thought content (Exhibits 7F, 8F, 9F, 10F). She complained of low motivation to socialize or leave home, but noted she was not currently in counseling and was doing well on her current medications (Exhibit 9F). In February 2017, the [Plaintiff] reported that things had been stressful, but her mood had been fairly good and she was doing well on her current medication, further indicating that her medication helped her to be able to sit still to watch television, help her kids with their homework, and stay on task to complete household chores (Exhibit 13F). Two months later, in April 2017, however, she indicated that her medication was not working and she was fidgety and could not concentrate, though her mood was doing fairly well. She also noted some situational stressors in relation to her daughter. Though she continued to exhibit a normal mental status examination, her medication was changed. By May 2017, however, the [Plaintiff] wanted to go back on her prior medication. She also indicated that she was physically and emotionally drained as her daughter had ballgames and she was watching her three grandchildren.

In August 2017, the [Plaintiff] again reported doing well on her medication (Exhibit 16F). She w[a]s sleeping and eating well, her mood and concentration were good, and she was watching her [two-year-old] granddaughter. In November 2017, however, she indicated she was gradually getting worse, with low motivation and energy, and she had stopped taking her medication two to three weeks prior as she felt they were not helping. In December 2017, she reported flashbacks, intrusive memories, avoiding, and problems with concentrating, though these symptoms improved when she re-started her medication. She was also noted to have a normal mental status examination at that time, with normal memory, attention, and concentration.

In early 2018, the [Plaintiff] reported having increased anxiety with situational stressors, though she had no recent symptoms of PTSD, no recent panic attacks, and her depression had improved (Exhibits 18F, 21F). She continued to present as alert and oriented with normal mood and affect, and normal behavior, judgment, and thought content. In mid-2018, she noted some worsening symptoms of anxiety, but indicated her depression was doing better (Exhibit 21F). By June 2018, she indicated that her anxiety was not as bad and was more manageable, her social anxiety had improved, and she had only had one panic attack since her last visit. She had some mild episodes of depression that did not last as long or go as deep as they previously had, and she was les[s] disorganized, able to focus, and more productive. In August 2018 and September 2018, she reported increased PTSD symptoms after having watched a movie, however she again presented within normal mental status examination limits and retained normal memory and concentration (Exhibits 21F, 24F).

(Tr. 302–04).

4

### ii.    Relevant Hearing Testimony

At the hearing, Plaintiff testified to her prior drug abuse (Tr. 355–58) and that she had been sober for three years. (Tr. 361). Plaintiff testified that she is unable to work due to "a lot of anxiety, depression and PTSD." (Tr. 360). She would have anxiety attacks four days a week which last all day. (Tr. 361). She described her anxiety attacks as "just absolutely not be able to leave my apartment… all day… I'm scared to go outside, I'm scared to talk to people, I'm scared to go around anybody." (Tr. 362). When she is having a "good day," Plaintiff can attend her daughter's softball games, watch her grandchild, and do "the things that I need to do." (*Id.*).

Plaintiff testified that, at the time of the hearing, "we're trying to get symptoms under control and we're trying to figure out… what we can do to … help it." (Tr. 363). When asked if the medication, Concerta, helps, Plaintiff replied, "[t]he depression's manageable." (*Id.*). Plaintiff testified that being around a lot of people triggers her symptoms. (*Id.*).

### B. The ALJ's Decision

The ALJ found that Plaintiff has not engaged in substantial gainful activity since June 21, 2016, the application date. (Tr. 297). The ALJ determined that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine, bilateral carpal tunnel syndrome, obesity, bipolar disorder, depression, anxiety, attention deficit hyperactivity disorder (ADHD), and post-traumatic stress disorder (PTSD). (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 298). The ALJ considered whether her impairments met Listings 12.04 (depressive, bipolar and related disorders) 12.06 (anxiety and obsessive-compulsive disorders), 12.11 (neurodevelopmental disorders), and 12.15 (trauma and stressor related disorders). (*Id.*). The ALJ discussed each of the paragraph B criteria, determining that Plaintiff has moderate

limitations in understanding, remembering, or applying information; interacting with others; in concentrating, persisting, or maintaining pace; and in adapting or managing oneself. (Tr. 299). The ALJ next considered whether the paragraph C criteria were met and determined that they were not. (*Id.*).

> As to Plaintiff's mental residual functional capacity, the ALJ opined:

> [Plaintiff] retains the ability to understand, remember, and carry out simple, repetitive tasks. The [Plaintiff] can respond appropriately to supervisors and co-workers in a task-oriented setting with no public contact and occasional interaction with co-workers. Additionally, she can adapt to simple changes and avoid hazards in a setting without strict production quotas.

(Tr. 300).

> Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record…" (Tr. 300–01).

> As for the relevant opinion evidence, the ALJ concluded,

> The undersigned has also read and considered the opinions of the State Agency psychological consultants and assigns some weight; however, greater weight is assigned to the opinions of psychological consultative examiner Mr. Spindler, discussed below (Exhibits 1A, 3A; see also Exhibit 6F). While the undersigned agrees that the evidence supports finding mental limitations in all "paragraph b" domains, the overall evidence is more supportive of the above residual functional capacity. For example, although the [Plaintiff] reported symptoms related to her impairments, including flashbacks, intrusive memories, and issues with concentration, she performed quite well on her psychological consultative examination. In fact, it was generally noted that she had no issues, but it was likely that her mental health symptoms would cause issues in all four areas. Still, throughout the records, even during periods of increased symptoms, the [Plaintiff] was repeatedly noted to be alert and oriented, with normal and/or appropriate mood and behavior, normal judgment and insight, and normal memory and concentration, even during periods of reported increase in mental health symptoms (see e.g. Exhibits 5F, 7F, 8F, 9F, 10F, 13F, 16F, 18F, 21F, 24F). Thus, the undersigned finds that the above residual functional capacity appropriately considers all of this evidence.

> As discussed above, significant weight is given to the opinions of psychological

consultative examiner Mr. Spindler (Exhibit 6F). Mr. Spindler indicated that the [Plaintiff] seemed capable of understanding and carrying out instructions in most job settings, but given the severity of her current mental problems, it seemed unlikely she would make effective use of her cognitive abilities. She noted she did not appear to have any major difficulty staying focused during the interview, but given her mental problems it seemed unlikely that she could maintain a level of attention and concentration sufficient for most job settings. Though she reported she usually received good job performance ratings and had seldom a major problem getting along with coworkers and supervisors, it seemed unlikely she would be able to respond appropriately to supervision and co-workers given her current mental problems. Finally, though it appeared she was handling current life stressors moderately, given her current mental problems, it seemed unlikely she would be able to respond appropriate to routine work pressures. Following this examination, though the [Plaintiff] reported variable symptoms, she was generally noted to be doing well on her medication and she was repeatedly noted to be alert and oriented, with normal and/or appropriate mood and behavior, normal judgment and insight, and normal memory and concentration, even during periods of reported increase in mental health symptoms (see e.g. Exhibits 5F, 7F, 8F, 9F, 10F, 13F, 16F, 18F, 21F, 24F). Overall, the evidence does not show any increase in difficulty for the [Plaintiff] to function in any of these "paragraph b" areas. Still, in order to account for the possibility of issues, given her symptoms, the undersigned agrees with the assessment provided by Dr. Spindler and finds that the [Plaintiff] would have no more than moderate limitations. Thus, the undersigned finds the above residual functional capacity to be appropriate.

(Tr. 305–06).

Relying on the VE's testimony, the ALJ concluded that Plaintiff could not perform her past relevant work as a server and bartender, but could perform jobs that exist in significant numbers in the national economy, such as a labeler, routing clerk or tacking machine tender. (Tr. 307–08). He thus concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since June 21, 2016, the date the application was filed (20 CFR 416.920(g))." (Tr. 308).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III.    DISCUSSION

Plaintiff argues that the ALJ's mental RFC is not consistent with the mental health evidence. (Doc. 8. at 9). Specifically, Plaintiff contends, the ALJ failed to address the material inconsistencies between Mr. Spindler's opinion and the mental RFC because it was "allegedly created based, at least in part, on Dr. Spindler's findings." (*Id.* at 10).

"The Social Security Administration defines three types of medical sources: non-examining sources, non-treating (but examining) sources, and treating sources." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 273 (6th Cir. 2015) (citing 20 C.F.R. § 404.1502). "A physician qualifies as a treating source if there is an 'ongoing treatment relationship' such that the claimant sees the physician 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Reeves*, 618 F. App'x at 273 (quoting 20 C.F.R. § 404.1527(c)(2)). If the treating physician's opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record,' then an ALJ 'will give it controlling weight.'" *Reeves*, 618 F. App'x at 273 (quoting 20 C.F.R. § 404.1527(c)(2)). And, when an ALJ does not give the treating source's opinion controlling weight, the ALJ must give

"'good reasons'" for discounting the opinion.  *Reeves*, 618 F. App'x at 273 (quoting *Rogers*, 486 F.3d at 242).

On the other hand, when the opinion comes from a non-treating or non-examining source, it is usually not entitled to controlling weight.  20 C.F.R. § 404.1527(c)(2).  Rather, the ALJ should consider relevant factors, including supportability, consistency, and specialization.  20 C.F.R. § 404.1527(d)(2).  There is however, no "reasons-giving requirement" for non-treating source opinions.  *Martin v. Comm'r of Soc. Sec.*, 658 F. App'x 255, 259 (6th Cir. 2016).  Rather, the ALJ must provide only "a meaningful explanation regarding the weight given to particular medical source opinions."  *Mason v. Comm'r of Soc. Sec.*, No. 1:18 CV 1737, 2019 WL 4305764, at *7 (N.D. Ohio Sept. 11, 2019) (citing SSR 96-6p, 1996 WL 374180, at *2).

Here, Mr. Spindler performed a consultative psychological examination of Plaintiff, (Tr. 629–35), and the ALJ reviewed his findings at length, (Tr. 303).  Discussing Mr. Spindler's opinion, the ALJ found that it was entitled to "significant weight."  (Tr. 306).  He further noted that Mr. Spindler distinguished between Plaintiff's general mental RFC and her mental RFC at the time of Mr. Spindler's examination.  (*See id.*).  Generally, Mr. Spindler found that Plaintiff: "seemed capable of understanding and carrying out instructions in most job settings"; "did not appear to have any major difficulty staying focused during the interview"; "reported she usually received good job performance ratings and had seldom a major problem getting along with coworkers and supervisors"; and handled "current life stressors moderately" well.  (*Id.*).  But, the ALJ recognized, Mr. Spindler opined that Plaintiff's mental problems *at the time of the examination* significantly limited her mental residual functional capacity.  (*See, e.g.*, *id.* ("[G]iven the severity of her current mental problems, it seemed unlikely she would make effective use of her cognitive abilities. … [I]t seemed unlikely she would be able to respond appropriate to routine

work pressures given her current mental problems."). Continuing, the ALJ explained that after Mr. Spindler's examination, Plaintiff "reported variable symptoms," but "she was generally noted to be doing well on her medication and she was repeatedly noted to be alert and oriented, with normal and/or appropriate mood and behavior, normal judgment and insight, and normal memory and concentration, even during periods of reported increase in mental health symptoms. (*Id.*). In conclusion, the ALJ agreed with Mr. Spindler's assessment and found that the Plaintiff would have no more than moderate limitations due to her mental impairments. (*Id.*).

Consistent with this conclusion, the ALJ found that Plaintiff: "retains the ability to understand, remember, and carry out simple, repetitive tasks"; "can respond appropriately to supervisors and co-workers in a task-oriented setting with no public contact and occasional interaction with co-workers"; and "can adapt to simple changes and avoid hazards in a setting without strict production quotas." (Tr. 300).

Plaintiff insists that the ALJ erred because his analysis of Mr. Spindler's opinion is inconsistent with his mental RFC analysis. (Doc. 8 at 6–10). Specifically, she argues, the ALJ's "mental residual functional capacity is far less restrictive then what [M]r. Spindler opined in his evaluation." (*Id.* at 7).

A few basic principles guide the Undersigned's recommendation here. One, the ALJ is responsible for reviewing all of the medical and non-medical evidence to formulate a claimant's RFC. 20 C.F.R. § 416.946(c); *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017). Two, to the extent medical evidence conflicts, the ALJ is charged with resolving any conflict. *Shepard*, 705 F. App'x at 442 (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). Three, regardless of the weight assigned to a medical source opinion, the ALJ is not required to adopt all of a medical source's proposed limitations. *See Reeves v. Comm'r of Soc. Sec.*, 618 F.

10

App'x 267, 275 (6th Cir. 2015) ("Although the ALJ gave great weight to Dr. Torello's opinion, he was not required to incorporate the entirety of her opinion, especially those findings that are not substantially supported by evidence in the record."); *Mason v. Comm'r of Soc. Sec.*, No. 1:18 CV 1737, 2019 WL 4305764, at *10 (N.D. Ohio Sept. 11, 2019) (finding that the ALJ was not required to adopt all of the non-treating source's limitations). And, four, an ALJ is not required to provide good reasons as to why he did not adopt a non-treating source's proposed limitations. *See Martin v. Comm'r of Soc. Sec.*, 658 F. App'x 255, 259 (6th Cir. 2016) ("Martin protests the ALJ's lack of explanation as to why Martin's marked impairment in interacting with the general public—as found by Dr. Joslin—and his moderate to marked impairment in his ability to sustain concentration—as found by Dr. Rutledge—were not explicitly incorporated into Martin's RFC. But because Dr. Rutledge and Dr. Joslin are non-treating sources, the reasons-giving requirement is inapplicable to their opinions.").

In light of these principles, Plaintiff's argument is unpersuasive. Although the ALJ assigned Mr. Spindler's opinion "significant weight," he was not required to adopt each of Mr. Spindler's proposed functional limitations. *See Reeves*, 618 F. App'x at 275; *Mason*, 2019 WL 4305764, at *10. Nor was he required to give good reasons for why he did not incorporate all of Mr. Spindler's proposed functional limitations. *See Martin*, 658 F. App'x at 259. All that was required was for the ALJ to "say enough to allow the appellate court to trace the path of his reasoning." *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (citation and internal quotations omitted).

The ALJ did that here. He reviewed Mr. Spindler's opinion and agreed with it to the extent it recommended no more than moderate limitations due to Plaintiff's mental impairments. (Tr. 306). The key to the ALJ's analysis was the temporal distinction made by Mr. Spindler during his

11

examination.  (*See id.*).  Mr. Spindler recognized that Plaintiff generally experienced mild to moderate limitations due to her mental impairments, but, at the time of his exam, her mental impairments were particularly acute, resulting in more significant limitations.  (*Id.*).  Because the record demonstrated that Plaintiff's mental impairments and ability to function improved after her examination with Mr. Spindler, the ALJ relied on Mr. Spindler's general findings, rather than those concerning Plaintiff's mental impairments at the time of Mr. Spindler's examination.  (*Id.*).

Substantial evidence supports the ALJ's mental RFC analysis.  He reviewed the objective medical record, which reflects that Plaintiff's symptoms caused by her mental impairment fluctuated over time.  (Tr. 302–04).  From 2016 through 2018, Plaintiff experienced intermittent depression and anxiety in addition to occasional flashbacks and intrusive memories related to her PTSD.  (*Id.*).  Her bouts of depression and anxiety resulted in her having little energy, limited motivation to socialize or to leave the house, and some difficulty concentrating.  (*Id.*).

But throughout that time period, medical sources consistently described Plaintiff as alert and oriented, with normal judgment, insight, behavior, memory, and concentration, even when she reported acute symptoms caused by her mental impairments.  (Tr. 305 (citing Exhibits 5F, 7F–10F, 13F, 16F, 18F, 21F, 24F)).  Her activities of daily living included taking care of her daughter, babysitting her grandchildren, performing household chores, and running errands, all without difficulty following instructions or getting along with authority figures.  (*Id.* (citing Exhibits 3F, 4F)).  On this record, it is not difficult to conclude that there is sufficient "relevant evidence" that "a reasonable mind might accept as adequate to support" the ALJ's mental RFC analysis, *Rogers*, 486 F.3d at 241 (citation and internal quotation marks omitted).  The ALJ did not err here as a result.

## IV.    CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## V.    PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date:    August 20, 2020                     /s/ Kimberly A. Jolson
                                             KIMBERLY A. JOLSON
                                             UNITED STATES MAGISTRATE JUDGE