UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHANE R. GREEN, | : | |
| | : | |
| | | Case No. 2:20-cv-232 |
| Plaintiff, | : | JUDGE SARAH D. MORRISON |
| | | MAGISTRATE JOLSON |
| v. | : | |
| | | |
| COMMISSIONER OF | | |
| SOCIAL SECURITY, | : | |
| | | |
| Defendant. | : | |

## OPINION & ORDER

Plaintiff Shane Green brings this action under 42 U.S.C. §§ 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") Benefits. This matter is before the Court on the Plaintiff's Objection (ECF No. 16) to the Report and Recommendation ("R&R") issued by the United States Magistrate Judge on August 20, 2020 (ECF No. 15). For the following reasons, the Court **OVERRULES** Plaintiff's Objection, **ADOPTS** the R&R, and **AFFIRMS** the Commissioner's decision.

I.     **BACKGROUND**

The Magistrate Judge accurately described the procedural background as follows. Plaintiff protectively filed her application for SSI on August 24, 2016, alleging that she was disabled beginning October 13, 2015. (Doc. 6, Tr. 470–75). After her application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held the hearing on October 2, 2018. (Tr. 352–68). On December 17, 2018, the ALJ issued a decision denying Plaintiff's application for benefits. (Tr. 292–308). The Appeals Council denied Plaintiff's request

for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–7).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on January 15, 2020 (Doc. 1), and the Commissioner filed the administrative record on March 16, 2020 (Doc. 6). Plaintiff filed her Statement of Errors, (Doc. 8), which is fully briefed and ripe for consideration.

### A. Relevant Medical History and Hearing Testimony

Because Plaintiff's statement of errors pertains to only her mental impairment, the Magistrate limited the discussion of the medical record and the hearing testimony to the same.

#### 1. Relevant Medical History

> Shortly before her alleged onset date, the [Plaintiff] presented with complaints of anxiety as she was in withdrawal from Percocet (Exhibits 1F, 2F). She entered treatment in August 2015, with the records showing that she remained sober as of that time (Exhibit 2F, 6F, 7F, 13F). She was discharged in October 2015; at which time it was noted that her goals were met and she was dealing well with life stressors.

(Tr. 298).

> The [Plaintiff] reported issues with concentration, anxiety attacks, and being scared to go outside, talk to people, or be around others. During her psychological consultative examination, however, the [Plaintiff] presented as alert, oriented, and appropriate[ly] dressed with, what appeared to be, average intelligence (Exhibit 6F). She seemed preoccupied with her thoughts, though, and it was occasionally necessary for her to need questions repeated. Her answers tended to be brief, but coherent and relative, and her thought processes seemed sluggish, though her thought associations were adequate. The [Plaintiff] was noted to seem to be discouraged by life in general and she appeared moderately depressed. She worried about the welfare of her children, but indicated she had good relationships with her siblings and she usually received [a] good job performance rating, having seldom had a major problem getting along with co-workers and supervisors. Still, the [Plaintiff] was noted to be capable of understanding and remembering instructions, she was noted to not have any major difficulties staying focused during the interview,

> and it appeared she was handling her life stressors moderately. Throughout the records, the [Plaintiff] reported some improvement in her symptoms with medication, though she did have periods of increased situational stressors. Still, even during periods of increased symptoms, the [Plaintiff] was repeatedly noted to be alert and oriented, with normal and/or appropriate mood and behavior, normal judgment and insight, and normal memory and concentration, even during periods of reported increase in mental health symptoms (*see e.g.* Exhibits 5F, 7F, 8F, 9F, 10F, 13F, 16F, 18F, 21F, 24F). The [Plaintiff] also reported that she was able to attend her daughter's ball games, babysit her grandchildren, cook, clean, do laundry, shop for groceries, take care of pets, pay bills, count change, and use a checkbook (Exhibits 3E, 4E). Further, she had no problems following instructions or getting along with authority figures.

(Tr. 299).

> Mentally, the records document the [Plaintiff]'s depression, anxiety, PTSD, bipolar disorder, and ADHD. In early to mid-2016, the [Plaintiff] reported being in a down mood with no energy, though she denied mood symptoms (Exhibit 3F). She indicated that she was focusing better now that she was not working, however, and she was spending a lot of time with her kids. In October 2016, during her physical consultative examination, the [Plaintiff] noted occasional difficulty with concentration and focusing on task; however, she exhibited a pleasant affect and appropriate mood, she was alert and oriented and able to follow directions readily, she did not avoid eye contact, and her mentation and thought process appeared to be normal. Treatment notes from that same month indicate that the [Plaintiff]'s sleep was fine, her interest and energy level were good, and her concentration was good on medication (Exhibit 9F). At that time, the [Plaintiff] also exhibited a normal mental status examination, with appropriate mood and affect, appropriate fund of knowledge, no memory impairment, and normal attention span and concentration.
>
> In November 2016, the [Plaintiff] underwent a psychological consultative examination with James Spindler, M.S. (Exhibit 6F). Upon examination, the [Plaintiff] presented as alert, oriented, and appropriately

3

dressed with, what appeared to be, average intelligence. She seemed preoccupied with her thoughts, though, and it was occasionally necessary for her to need questions repeated. Her answers tended to be brief, but coherent and relative, and her thought processes seemed sluggish, though her thought associations were adequate. The [Plaintiff] was noted to seem to be discouraged by life in general and she appeared moderately depressed. She worried about the welfare of her children, but indicated she had good relationships with her siblings and she usually received [a] good job performance rating, having seldom had a major problem getting along with co-workers and supervisors.

Mr. Spindler indicated that the [Plaintiff] seemed capable of understanding and carrying out instructions in most job settings and she did not appear to have any major difficulties staying focused during the interview, but given her mental impairments, it seemed unlikely she would make effective use of her cognitive abilities or be able to maintain a level of attention and concentration sufficient for most job settings. Despite her reports of past good job performance and interaction, he indicated that it seemed unlikely she would be able to respond appropriate[ly] to supervision and co-workers with her mental health problems. Additionally, though it appeared that she was handling current life stressors moderately, it seemed unlikely she would be able to respond appropriately to routine work pressures. Overall, however, Mr. Spindler did find the [Plaintiff] had the mental ability to manage her funds.

Treatment notes from later in November 2016 and December 2016 indicate that the [Plaintiff] reported being irritable and exhibiting some nervousness and anxiety since the passing of her mother, though she continued to present as alert and oriented, with normal mood and affect, and normal behavior, judgment, and thought content (Exhibits 7F, 8F, 9F, 10F). She complained of low motivation to socialize or leave home, but noted she was not currently in counseling and was doing well on her current medications (Exhibit 9F). In February 2017, the [Plaintiff] reported that things had been stressful, but her mood had been fairly good and she was doing well on her

4

current medication, further indicating that her medication helped her to be able to sit still to watch television, help her kids with their homework, and stay on task to complete household chores (Exhibit 13F). Two months later, in April 2017, however, she indicated that her medication was not working and she was fidgety and could not concentrate, though her mood was doing fairly well. She also noted some situational stressors in relation to her daughter. Though she continued to exhibit a normal mental status examination, her medication was changed. By May 2017, however, the [Plaintiff] wanted to go back on her prior medication. She also indicated that she was physically and emotionally drained as her daughter had ballgames and she was watching her three grandchildren.

In August 2017, the [Plaintiff] again reported doing well on her medication (Exhibit 16F). She w[a]s sleeping and eating well, her mood and concentration were good, and she was watching her [two-year-old] granddaughter. In November 2017, however, she indicated she was gradually getting worse, with low motivation and energy, and she had stopped taking her medication two to three weeks prior as she felt they were not helping. In December 2017, she reported flashbacks, intrusive memories, avoiding, and problems with concentrating, though these symptoms improved when she re-started her medication. She was also noted to have a normal mental status examination at that time, with normal memory, attention, and concentration.

In early 2018, the [Plaintiff] reported having increased anxiety with situational stressors, though she had no recent symptoms of PTSD, no recent panic attacks, and her depression had improved (Exhibits 18F, 21F). She continued to present as alert and oriented with normal mood and affect, and normal behavior, judgment, and thought content. In mid-2018, she noted some worsening symptoms of anxiety, but indicated her depression was doing better (Exhibit 21F). By June 2018, she indicated that her anxiety was not as bad and was more manageable, her social anxiety had improved, and she had only had one panic attack since her last visit. She had some mild episodes of depression that did not last as long

5

> or go as deep as they previously had, and she was les[s] disorganized, able to focus, and more productive. In August 2018 and September 2018, she reported increased PTSD symptoms after having watched a movie, however she again presented within normal mental status examination limits and retained normal memory and concentration (Exhibits 21F, 24F).

(Tr. 302–04).

### 2. Relevant Hearing Testimony

At the hearing, Plaintiff testified to her prior drug abuse (Tr. 355–58) and that she had been sober for three years. (Tr. 361). Plaintiff testified that she is unable to work due to "a lot of anxiety, depression and PTSD." (Tr. 360). She would have anxiety attacks four days a week which last all day. (Tr. 361). She described her anxiety attacks as "just absolutely not be able to leave my apartment… all day… I'm scared to go outside, I'm scared to talk to people, I'm scared to go around anybody." (Tr. 362). When she is having a "good day," Plaintiff can attend her daughter's softball games, watch her grandchild, and do "the things that I need to do." (*Id.*).

Plaintiff testified that, at the time of the hearing, "we're trying to get symptoms under control and we're trying to figure out… what we can do to … help it." (Tr. 363). When asked if the medication, Concerta, helps, Plaintiff replied, "[t]he depression's manageable." (*Id.*) Plaintiff testified that being around a lot of people triggers her symptoms. (*Id.*)

6

**B. The ALJ's Decision**

The ALJ found that Plaintiff has not engaged in substantial gainful activity since June 21, 2016, the application date. (Tr. 297). The ALJ determined that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine, bilateral carpal tunnel syndrome, obesity, bipolar disorder, depression, anxiety, attention deficit hyperactivity disorder (ADHD), and post-traumatic stress disorder (PTSD). (*Id*.) The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 298). The ALJ considered whether her impairments met Listings 12.04 (depressive, bipolar and related disorders) 12.06 (anxiety and obsessive-compulsive disorders), 12.11 (neurodevelopmental disorders), and 12.15 (trauma and stressor related disorders). (*Id*.) The ALJ discussed each of the paragraph B criteria, determining that Plaintiff has moderate limitations in understanding, remembering, or applying information; interacting with others; in concentrating, persisting, or maintaining pace; and in adapting or managing oneself. (Tr. 299). The ALJ next considered whether the paragraph C criteria were met and determined that they were not. (*Id*.)

As to Plaintiff's mental residual functional capacity, the ALJ opined:

> [Plaintiff] retains the ability to understand, remember, and carry out simple, repetitive tasks. The [Plaintiff] can respond appropriately to supervisors and co-workers in a task-oriented setting with no public contact and occasional interaction with co-workers. Additionally, she can adapt to simple changes and avoid hazards in a setting without strict production quotas.

(Tr. 300).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record…" (Tr. 300–01).

As for the relevant opinion evidence, the ALJ concluded,

> The undersigned has also read and considered the opinions of the State Agency psychological consultants and assigns some weight; however, greater weight is assigned to the opinions of psychological consultative examiner Mr. Spindler, discussed below (Exhibits 1A, 3A; see also Exhibit 6F). While the undersigned agrees that the evidence supports finding mental limitations in all "paragraph b" domains, the overall evidence is more supportive of the above residual functional capacity. For example, although the [Plaintiff] reported symptoms related to her impairments, including flashbacks, intrusive memories, and issues with concentration, she performed quite well on her psychological consultative examination. In fact, it was generally noted that she had no issues, but it was likely that her mental health symptoms would cause issues in all four areas. Still, throughout the records, even during periods of increased symptoms, the [Plaintiff] was repeatedly noted to be alert and oriented, with normal and/or appropriate mood and behavior, normal judgment and insight, and normal memory and concentration, even during periods of reported increase in mental health symptoms (see e.g. Exhibits 5F, 7F, 8F, 9F, 10F, 13F, 16F, 18F, 21F, 24F). Thus, the undersigned finds that the above residual functional capacity appropriately considers all of this evidence.
>
> As discussed above, significant weight is given to the opinions of psychological consultative examiner Mr. Spindler (Exhibit 6F). Mr. Spindler indicated that the [Plaintiff] seemed capable of understanding and carrying out instructions in most job settings, but given the

8

> severity of her current mental problems, it seemed
> unlikely she would make effective use of her cognitive
> abilities. She noted she did not appear to have any major
> difficulty staying focused during the interview, but given
> her mental problems it seemed unlikely that she could
> maintain a level of attention and concentration sufficient
> for most job settings. Though she reported she usually
> received good job performance ratings and had seldom a
> major problem getting along with coworkers and
> supervisors, it seemed unlikely she would be able to
> respond appropriately to supervision and co-workers
> given her current mental problems. Finally, though it
> appeared she was handling current life stressors
> moderately, given her current mental problems, it seemed
> unlikely she would be able to respond appropriate[ly] to
> routine work pressures. Following this examination,
> though the [Plaintiff] reported variable symptoms, she
> was generally noted to be doing well on her medication
> and she was repeatedly noted to be alert and oriented,
> with normal and/or appropriate mood and behavior,
> normal judgment and insight, and normal memory and
> concentration, even during periods of reported increase in
> mental health symptoms (see e.g. Exhibits 5F, 7F, 8F, 9F,
> 10F, 13F, 16F, 18F, 21F, 24F). Overall, the evidence does
> not show any increase in difficulty for the [Plaintiff] to
> function in any of these "paragraph b" areas. Still, in
> order to account for the possibility of issues, given her
> symptoms, the undersigned agrees with the assessment
> provided by Dr. Spindler and finds that the [Plaintiff]
> would have no more than moderate limitations. Thus, the
> undersigned finds the above residual functional capacity
> to be appropriate.

(Tr. 305–06).

Relying on the VE's testimony, the ALJ concluded that Plaintiff could not perform her past relevant work as a server and bartender but could perform jobs that exist in significant numbers in the national economy, such as a labeler, routing clerk or tacking machine tender. (Tr. 307–08). He thus concluded that Plaintiff "has

not been under a disability, as defined in the Social Security Act, since June 21, 2016, the date the application was filed (20 CFR 416.920(g))." (Tr. 308).

## II. STANDARD OF REVIEW

If a party objects within the allotted time to a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)); *see also,* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

## III. ANALYSIS

Ms. Green's objection to the R&R strongly mimics her Statement of Errors. (Doc. 8.) Particularly, Ms. Green states that the Commissioner's determination must be vacated in her favor or reversed and remanded because while it states that it places "significant" weight on Dr. Spindler's opinions, it comes to a different conclusion as to Ms. Green's mental RFC without an explanation for that difference. (Doc. 16 at 3, 5.) Simply put, "the ALJ failed to properly explain how [Mr.] Spindler's opinions impacted the residual functional capacity." (Doc. 16 at 3.)

The Magistrate disagreed and held:

Here, Mr. Spindler performed a consultative psychological examination of Plaintiff, (Tr. 629–35), and the ALJ reviewed his findings at length, (Tr. 303). Discussing Mr. Spindler's opinion, the ALJ found that it was entitled to "significant weight." (Tr. 306). He further noted that Mr. Spindler distinguished between Plaintiff's general mental RFC and her mental RFC at the time of Mr. Spindler's examination. (*See id*.). Generally, Mr. Spindler found that Plaintiff: "seemed capable of understanding and carrying out instructions in most job settings"; "did not appear to have any major difficulty staying focused during the interview"; "reported she usually received good job performance ratings and had seldom a major problem getting along with coworkers and supervisors"; and handled "current life stressors moderately" well. (*Id*.). But, the ALJ recognized, Mr. Spindler opined that Plaintiff's mental problems *at the time of the examination* significantly limited her mental residual functional capacity. (See, e.g., id. ("[G]iven the severity of her current mental problems, it seemed unlikely she would make effective use of her cognitive abilities.…[I]t seemed unlikely she would be able to respond appropriate to routine work pressures given her current mental problems."). Continuing, the ALJ explained that after Mr. Spindler's examination, Plaintiff "reported variable symptoms," but "she was generally noted to be doing well on her medication and she was repeatedly noted to be alert and oriented, with normal and/or appropriate mood and behavior, normal judgment and insight, and normal memory and concentration, even during periods of reported increase in mental health symptoms. (*Id*.). In conclusion, the ALJ agreed with Mr. Spindler's assessment and found that the Plaintiff would have no more than moderate limitations due to her mental impairments. (*Id*.).

Consistent with this conclusion, the ALJ found that Plaintiff: "retains the ability to understand, remember, and carry out simple, repetitive tasks"; "can respond appropriately to supervisors and co-workers in a task-oriented setting with no public contact and occasional interaction with co-workers"; and "can adapt to simple changes and avoid hazards in a setting without strict production quotas." (Tr. 300).

11

(Doc. 15 at 9-10)(emphasis added.) From this, the Magistrate correctly noted that the ALJ is not required to adopt all of Mr. Spindler's opinions. "Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim . . . ." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). Instead, "[t]he ALJ is charged with assessing a claimant's RFC 'based on all of the relevant medical and other evidence' of record." *Id.* (quoting 20 C.F.R. § 416.945(a)(3)). Ms. Green does not dispute that the ALJ considered all such evidence.

Furthermore, the ALJ was not required to provide the level of detail Ms. Green seeks because Mr. Spindler was not a treating source. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). Rather, all the ALJ needed to do was to "say enough to allow the appellate court to trace the path of his reasoning." *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011)(quotation and citation omitted.) Here, the ALJ did just that by choosing to follow Mr. Spindler's general observations instead of Mr. Spindler's observation-specific findings.

In sum, Ms. Green's Objections are **OVERRULED.**

### IV. CONCLUSION

The Court **OVERRULES** Ms. Green's Objections (Doc. 16) and **AFFIRMS** the Commissioner's Decision.

**IT IS SO ORDERED.**

                                        <u>s/ Sarah D. Morrison</u>
                                        **SARAH D. MORRISON**
                                        **UNITED STATES DISTRICT COURT**